*E-FILED - 7/16/08*

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| TARCICIO NOE CAMPOS,<br><br>  Petitioner,<br><br>  v.<br><br>MIKE EVANS, Warden,<br><br>  Respondent. | No. C 05-4879 RMW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS** |

**INTRODUCTION**

Petitioner Tarcicio Campos, a California state prisoner who is proceeding pro se, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the validity of his convictions for aggravated sexual assault on a child. In response to an order to show cause, respondent has filed an answer and petitioner has filed a traverse. Having reviewed the briefs and the underlying record, the court concludes that petitioner is not entitled to relief based on the claims presented and will deny the petition.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Campos879.hcruling.md

# BACKGROUND

Petitioner repeatedly sodomized his six-year-old stepson Christian before and during his marriage to the victim's mother. The California Court of Appeal summarized the facts of the case as follows:

> [Petitioner] moved in with Sandra B., the victim's mother, in November 1998, and they married in June 1999. The couple separated in January 2001. During the time the couple lived together, Sandra worked long hours at her job, and [petitioner] worked construction. [Petitioner] was often home with the victim, a six-year-old boy during the day. [Petitioner] was verbally and physically abusive of the victim, calling the victim derogatory names, such as "faggot," and hitting the victim on the head with his hand, hitting him with a shoe, and locking him in a closet.
>
> One incident of [petitioner's] physical abuse of the victim resulted in a call to the police. In 1999, Sandra's mother, Aurora, lived with Sandra and [petitioner]. Aurora returned home one day to find [petitioner] chasing the victim with a chain. The victim was sobbing loudly. When [petitioner] saw Aurora, he stopped chasing the victim, and told Aurora he was punishing the victim for touching some personal papers. Aurora saw visible welts on the victim's leg where defendant had hit him with the chain, so she called the police.[1]
>
> In September 2000, Sandra and [petitioner] separated, and Sandra took the victim and his brother to live with her family. In May 2001, the victim was in Stockton visiting with his aunt, Diana. The victim had previously told Diana that he did not like [petitioner], because [petitioner] hit him. That day, Diana was plucking her eyebrows and putting on makeup, and the victim asked if she could do the same to him. Believing this to be out of character for the victim, Diana asked him if anyone had touched him in a way that made him feel uncomfortable. After first denying it, the victim started to cry very hard and said that [petitioner] had "stick[ ] it in." When the victim calmed down, he told Diana that [petitioner] "got him on the . . . bed in that house and he stick[ ] it in." The victim also said he never told anyone because [petitioner] "threatened him" and told him to "'Zip it.'"
>
> After the victim told Diana about the molestation, she immediately drove him back to San Jose to tell Sandra about his claims. When Sandra arrived home from work, the victim told her that [petitioner] had "pull his pants down, and . . . he was . . . doing . . . back sex to him; that he put cream in his behind . . . that he was doing it." The victim told Sandra that [petitioner] had sex with him many times, and that [petitioner] had him do a "blow job" on [petitioner], and [petitioner] did the same to the victim. When he was asked why he had never said anything before, the victim said: "'Mama, I was scared. He told me not

---

1. Maria Orozco, a tenant who lived in Sandra B.'s house, testified at trial that she observed petitioner hit Christian "every single day," and often saw petitioner lock Christian in a closet. Ans., Ex. 2(C) (Reporter's Transcript) at 433-435. After one beating Orozco observed, the police were called and took a report. Id. at 437.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Campos879.hcruling.md      2

> to.'" The victim also said he was afraid if he told Sandra, she would not believe him.
>
> The victim stated that [petitioner] put "his dick in my butt" more than one time, but less than five times. He said the sex acts occurred in the master bedroom of the house where they lived with [petitioner]. The victim said [petitioner] would take off the victim's clothes, put him on the bed and have anal sex with him. When the victim told [petitioner] to "'Stop that,'" [petitioner] said "'No'" and, 'Just for a little while.'" The victim also said "It hurt," when [petitioner] had anal sex with him. After [petitioner] was done having anal sex with the victim, the victim went "potty" while [petitioner] remained on the bed. When the victim came out of the bathroom, [petitioner] made the victim perform oral sex on him. The victim then saw white "cream" come out of [petitioner], and said some of the "cream" went on the bed. [Petitioner] told the victim to "'Lick it.'" The victim said that happened "less than five times" on different days. [Petitioner] told the victim "Don't tell . . . anyone" and to "'Keep this secret'" or the victim would go to jail.

People v. Campos ("Op."), No. H024425, 2004 WL 352665 (Cal. Ct. App. Feb. 24, 2004) at *1-2.

A Santa Clara Superior Court jury convicted petitioner of two felony counts of aggravated sexual assault on a child under fourteen and ten or more years younger than defendant (Cal. Pen. Code § 269), with the underlying crimes of sodomy (Cal. Pen. Code § 286) and oral copulation (Cal. Pen. Code § 288a), committed by force, duress, menace, or fear of immediate and unlawful bodily injury, and one count of lewd or lascivious act on a child by force, violence, duress, menace, or fear of immediate and unlawful bodily injury on a child and another person (Cal. Pen. Code § 288(b)(1)). Op. at 2. The trial court sentenced petitioner to thirty-six years-to-life in state prison, with 305 days of credit for time served. Id.

Petitioner appealed. The California Court of Appeal for the Sixth Appellate District, in an unpublished opinion, affirmed the judgment. Id. at 1. The California Supreme denied his petitions for review and for writ of habeas corpus. Pet. at 4. Petitioner filed this federal habeas action in 2005. The court dismissed the petition for failing to exhaust claims, but granted petitioner's motion to proceed on the exhausted claims and to dismiss one claim. Docket Nos. 14, 15 & 16.

As grounds for federal habeas relief, petitioner contends (1) there was insufficient

1  evidence to uphold petitioner's conviction on force and duress in violation of the Sixth and
2  Fourteenth Amendments; (2) the trial court's jury instructions on the elements of force,
3  duress and menace were incomplete in violation of the Sixth and Fourteenth Amendments,
4  necessitating reversal of counts one and two; (3) the trial court admitted evidence of
5  uncharged sex acts and prior acts in violation of state and federal equal protection and due
6  process; (4) the trial court's jury charge improperly permitted the jury to find petitioner
7  guilty of the offenses based solely upon his alleged propensity to commit such offenses and
8  undermined the presumption of innocence and requirement of proof beyond a reasonable
9  doubt in violation of the Fifth, Sixth and Fourteenth Amendments; (5) the trial court erred in
10 permitting expert testimony on Child Abuse Accommodation Syndrome in violation of the
11 Sixth and Fourteenth Amendments; and (6) the trial court erroneously permitted the
12 prosecutor to present evidence of uncharged violent conduct allegedly committed by
13 petitioner in violation of the Sixth and Fourteenth Amendments.  Order to Show Cause at 2
14 (Docket No. 16).

## STANDARD OF REVIEW

16 A federal habeas court will entertain a petition for a writ of habeas corpus "in behalf
17 of a person in custody pursuant to the judgment of a State court only on the ground that he is
18 in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.
19 § 2254(a).  The court may not grant a petition with respect to any claim that was adjudicated
20 on the merits in state court unless the state court's adjudication of the claim "resulted in a
21 decision that was contrary to, or involved an unreasonable application of, clearly established
22 Federal law, as determined by the Supreme Court of the United States."  Id. § 2254(d)(1).
23 The court must presume correct any determination of a factual issue made by a state court
24 unless the petitioner rebuts the presumption of correctness by clear and convincing evidence.
25 28 U.S.C. §2254(e)(1).  If constitutional error is found, habeas relief is warranted only if the
26 error had a "substantial and injurious effect or influence in determining the jury's verdict."
27 Penry v. Johnson, 532 U.S. 782, 795 (2001) (quoting Brecht v. Abrahamson, 507 U.S. 619,

**United States District Court**
For the Northern District of California

1  638 (1993)).

2  The state court decision to which 2254(d) applies is the "last reasoned decision" of the
3  state court.  See Ylst v. Nunnemaker, 501 U.S. 797, 803-04 (1991); Barker v. Fleming, 423
4  F.3d 1085, 1091-92 (9th Cir. 2005).  When there is no reasoned opinion from the highest
5  state court to consider the petitioner's claims, the court looks to the last reasoned opinion.
6  See Nunnemaker at 801-06; Shackleford v. Hubbard, 234 F.3d 1072, 1079 n. 2 (9th Cir.
7  2000).

## DISCUSSION

**1.    Sufficiency of the Evidence**

Petitioner contends that there was insufficient evidence to support a finding that he used "force" or "duress" or both to commit the three crimes of which he was convicted. Pet., P. & A. at 3.  The state appellate court concluded that "the record demonstrates sufficient evidence to support the convictions on all three counts."  Op. at 4.

A federal court reviewing collaterally a state court conviction does not determine whether it is satisfied that the evidence established guilt beyond a reasonable doubt.  Payne v. Borg, 982 F.2d 335, 338 (9th Cir. 1992).  The federal court "determines only whether, 'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" See id. (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt may the writ be granted. See Jackson, 443 U.S. at 324.

As stated above, petitioner was convicted of committing three sexually criminal acts, which were charged as two counts of aggravated sexual assault and one count of committing a lewd act on a child.  The two predicate crimes attached to the charges of aggravated sexual assault were sodomy and forced oral copulation.  A conviction for criminal sodomy requires that the "act is accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the

United States District Court
For the Northern District of California

victim or another person." Cal. Pen. Code § 286(d). A conviction for criminal oral copulation requires that it is "accomplished against the victim's will by means of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Id. § 288a. A lewd act upon a child is criminal when it is accomplished "by use of force, violence, duress, menace, or fear of immediate and unlawful bodily injury on the victim or another person." Id. § 288(b)(1).

The state appellate court described the legal meaning of duress:

> 'Duress' has been defined as 'a direct or implied threat of force, violence, danger, hardship or retribution sufficient to coerce a reasonable person of ordinary susceptibilities to (1) perform an act which otherwise would not have been performed or, (2) acquiesce in an act to which one otherwise would not have submitted.' [D]uress involves psychological coercion. Duress can arise from various circumstances, including the relationship between the defendant and the victim and their relative ages and sizes. Where the defendant is a family member and the victim is young . . . the position of dominance and authority of the defendant and his continuous exploitation of the victim [are] relevant to the existence of duress.

Op. at 3 (citations removed).

Petitioner's claim is without merit. The record supports a conclusion that a rational trier of fact could have found the elements of duress beyond a reasonable doubt. For example, evidence was produced at trial that petitioner often hit Christian, taunted him with pejorative epithets, and told him not to tell anyone about the sexual acts because Christian might be sent to prison: "Mama, I was scared. [Petitioner] told me not to [say anything]." The physical beatings, the dominant position and relationship petitioner had over his six-year-old stepson, and the threats of punishment are evidence a reasonable juror could find proved that petitioner had used direct and implied threats of violence and psychological coercion to perform unwanted sexual acts on Christian. Because the court concludes that there was sufficient evidence of duress, which is an element of all three crimes, it is unnecessary to determine whether there was sufficient evidence of force. This claim is DENIED.

**2.     Jury Instructions**

Petitioner contends that the trial court's jury instructions on the meanings of "force," "duress," and "menace" were unconstitutionally incomplete, thereby omitting sufficient instruction on an element of aggravated sexual assault. Pet., P. & A. at 11. The state appellate court pointed out that the trial court defined "force" and "duress" with respect to the third charge, that of committing a lewd act upon a child. Op. at 4. "We conclude that a single reading of the definitions of 'force' and 'duress'. . . was sufficient on all counts charged against [petitioner]. Pursuant to CALJIC No. 1.01, the jury was instructed to consider the instructions as a whole and each in light of all the others." Id. at 5. The state appellate court further determined that the trial court was under no obligation to define "menace" because the term "was not used in a technical meaning peculiar to the law." Id.

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. See Estelle v. McGuire, 502 U.S. 62, 72 (1991). In other words, the court must evaluate jury instructions in the context of the overall charge to the jury as a component of the entire trial process. United States v. Frady, 456 U.S. 152, 169 (1982) (citing Henderson v. Kibbe, 431 U.S. 145, 154 (1977)). Whether a term in a jury instruction requires definition depends on whether the term expresses a concept within the jury's ordinary experience. United States v. Tirouda, 394 F.3d 683, 689 (9th Cir. 2005) (no error resulting from failure to define "accomplice" in an accomplice instruction). The omission or misdescription of an element of a crime will be found harmless unless it "'had substantial and injurious effect or influence in determining the jury's verdict.'" California v. Roy, 519 U.S. 2, 4 (1996) (quoting Brecht v. Abrahamson, 507 U.S. 619, 637 (1993)).

Petitioner's claim is without merit. He has not shown that the allegedly ailing instruction by itself so infected the entire trial that his conviction violated due process. Taking the instructions as a whole, the trial court did instruct the jury on the legal meanings of "force" and "duress." That these terms were defined during the instructions on a

different charge is irrelevant as the jury (and this reviewing court) must look at the overall instructions.

As to the question of "menace," petitioner also had not shown that the failure to define the term deprived him of due process. First, a jury finding of "force," or "duress," or "menace" is sufficient to convict on the two predicate crimes attached to the aggravated sexual assault charge. Therefore, even if "menace" was insufficiently defined, the jury permissibly could have found that petitioner committed the crimes with the use of "force" or "duress." Second, "menace" was used in its everyday meaning, and therefore the trial court was not required to define the term. Third, even if the trial court should have defined "menace," such a misstep is analyzed under the "harmless error" standard. Looking to this standard as cited above, petitioner has not shown that the trial court's not having defined "menace" had a substantial or injurious effect on the jury's verdict, especially considering that the jury could have found that petitioner committed the crimes by "force" or "duress." This claim is DENIED.

### 3. Admission of Uncharged Sex Crimes Acts

Petitioner contends that the admission of uncharged criminal acts to show his propensity to commit the charged offenses violated his rights to due process. Pet., P. & A. at 20.

The United States Supreme Court has left open the question of whether admission of propensity evidence violates due process. Estelle v. McGuire, 502 U.S. 62, 75 n. 5 (1991). Because the Supreme Court has reserved this issue as an "open question," the Ninth Circuit has held that a petitioner's due process right concerning the admission of propensity evidence is not clearly established for purposes of review under AEDPA. Alberni v. McDaniel, 458 F.3d 860, 866-67 (9th Cir. 2006). This claim is DENIED.

1 **4.      Unconstitutional Jury Instruction on Propensity Evidence**

2     Petitioner contends that jury instructions regarding propensity evidence, viz.,
3 CALJIC Nos. 2.50.01 and 2.50.1, allowed the jury to base the convictions solely on the
4 uncharged offenses and lessened the prosecutor's burden of proof.  Pet., P. & A. at 33-34.
5     CALJIC No. 2.50.01, "Evidence of Other Sexual Offenses," as read to petitioner's
6 jury in 2002, stated, in relevant part:

> Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense [on one or more occasions] other than those charged in the case.
> . . . .
>
> If you find that the defendant committed a sexual offense, you may, but are not required to, infer that the defendant had a disposition to commit sexual offenses.  If you find that the defendant had this disposition, you may, but are not required to, infer that [he][she] was likely to commit and did commit the crime [or crimes] of which [he][she] is accused.
>
> However, if you find by a preponderance of the evidence that the defendant committed [a] prior sexual offense[s], that is not sufficient by itself to prove beyond a reasonable doubt that [he][she] committed the charged crime[s].  The weight and significance of the evidence, if any, are for you to decide.
>
> [[Unless you are otherwise instructed, [y][Y]ou must not consider this evidence for any other purpose.]

17 Ans., Ex. 1 at 227.  CALJIC No. 2.50.1, "Evidence of Other Crimes By the Defendant
18 Proved by a Preponderance of the Evidence," as read to petitioner's jury, in relevant part,
19 is:  "Within the meaning of the preceding instructions the prosecution has the burden of
20 proving by a preponderance of the evidence that the defendant committed a crime or sexual
21 offenses other than those for which he is on trial."  Id. at 228.

22     Older versions of these jury instructions were found to be constitutionally flawed.
23 In 2004, the Ninth Circuit concluded that the "interplay of the two instructions [CALJIC
24 Nos. 2.50.01 and 2.50.1 in their 1999 versions] allowed the jury to find that [the criminal
25 defendant] committed the uncharged sexual offense by a preponderance of the evidence
26 and thus to infer that he had committed the charged acts based upon facts not found beyond
27 a reasonable doubt, but by a preponderance of the evidence."  Gibson v. Ortiz, 387 F.3d

1  812, 822 (9th Cir. 2004). Unlike the version read to petitioner's jury, which was amended
2  in 2001, the version of CALJIC No. 2.50.01 at issue in Gibson did not have the "reasonable
3  doubt" language, thus allowing the two statutes, when read in tandem, to find guilt upon a
4  preponderance rather than a beyond a reasonable doubt standard.[2]

5       The Due Process Clause of the Fourteenth Amendment requires the prosecution to
6  prove every element charged in a criminal offense beyond a reasonable doubt. See In re
7  Winship, 397 U.S. 358, 364 (1970). If the jury is not properly instructed that a defendant is
8  presumed innocent until proven guilty beyond a reasonable doubt, the defendant has been
9  deprived of due process. See Middleton v. McNeil, 541 U.S. 433, 436 (2004). Any jury
10 instruction that "reduce[s] the level of proof necessary for the Government to carry its
11 burden . . . is plainly inconsistent with the constitutionally rooted presumption of
12 innocence." Cool v. United States, 409 U.S. 100, 104 (1972).

13      Although the Constitution does not require jury instructions to contain any specific
14 language, the instructions must convey both that a defendant is presumed innocent until
15 proven guilty and that he may only be convicted upon a showing of proof beyond a
16 reasonable doubt. See Victor v. Nebraska, 511 U.S. 1, 5, (1994). "[T]he essential
17 connection to a 'beyond a reasonable doubt' factual finding cannot be made where the
18 instructional error consists of a misdescription of the burden of proof, which vitiates all the
19 jury's findings." Sullivan v. Louisiana, 508 U.S. 275, 281 (1993). Where such an error
20 exists, it is considered structural and thus is not subject to harmless error review. See id. at
21 280-82.

22      Petitioner's claim is without merit. As read to petitioner's jury, CALJIC Nos.
23 2.50.01 and 2.50.1 sufficiently instructed the jury that it could find petitioner guilty of the

---

25 2. In Gibson, the court stated that had CALJIC No. 2.50.01 appeared without CALJIC No.
   2.50.1, the other jury instructions regarding the reasonable doubt standard would have
26 sufficiently protected the Gibson petitioner's rights. Gibson, 387 F.3d at 822. However,
   because CALJIC No. 2.50.1 links itself thematically and directly to No. 2.50.01, it would
27 permit the jury to find guilt of the charged offenses based on a preponderance standard
28 because No. 2.50.01 in Gibson did not contain the reasonable doubt standard. Id.

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Campos879.hcruling.md     10

charged offenses only upon a showing of proof beyond a reasonable doubt. This claim is DENIED.

**5.     Admission of Child Sexual Abuse Accommodation Syndrome**

Petitioner contends that the admission of expert testimony on the subject of Child Sexual Abuse Accommodation Syndrome ("CSAAS") violated his constitutional rights. Pet., P. & A. at 45-46. He asserts that the trial court's admission of CSAAS evidence was "an impermissible way of bolstering the credibility of a child witness." Id. at 48.

"CSAAS describes various emotional stages, experienced by sexually abused children, that may explain their sometimes piecemeal and contradictory manner of disclosing abuse. Under the CSAAS analysis, inconsistencies in a child's accounts of abuse do not necessarily mean that the child is lying. The child could be telling different parts of what happened [with] different adults, based on the child's comfort level with each adult or on the developmental immaturity of the child's memory." Brodit v. Cambra, 350 F.3d 985, 991 (9th Cir. 2003). CSAAS evidence is often used to rehabilitate a child's credibility when a criminal defendant suggests that a child's behavior after the alleged incident is inconsistent with his or her testimony regarding the alleged molestation. Op. at 9.

In the instant case, the trial court admitted the expert testimony regarding CSAAS. Id. The trial court instructed the jury under CALJIC No. 10.64 that it must not consider this evidence proof that the alleged victim's sexual molestation claim is true.[3] Op. at 10.

---

3. CALJIC 10.64 reads: "Evidence has been presented to you concerning [child sexual abuse accommodation] [rape-trauma] syndrome. This evidence is not received and must not be considered by you as proof that the alleged victim's [molestation] [rape] claim is true. [[Child sexual abuse accommodation] [Rape trauma] syndrome research is based upon an approach that is completely different from that which you must take to this case. The syndrome research begins with the assumption that a [molestation] [rape] has occurred, and seeks to describe and explain common reactions of [children] [females] to that experience. As distinguished from that research approach, you are to presume the defendant innocent. The People have the burden of proving guilt beyond a reasonable doubt.] You should consider the evidence concerning the syndrome and its effect only for the limited purpose of showing, if it does, that the alleged victim's reactions, as

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Campos879.hcruling.md        11

1    The admission of evidence is not subject to federal habeas review unless a specific
2 constitutional guarantee is violated or the error is of such magnitude that the result is a
3 denial of the fundamentally fair trial guaranteed by due process. See Henry v. Kernan, 197
4 F.3d 1021, 1031 (9th Cir. 1999). The due process inquiry in federal habeas review is
5 whether the admission of evidence was arbitrary or so prejudicial that it rendered the trial
6 fundamentally unfair. See Walters v. Maass, 45 F.3d 1355, 1357 (9th Cir. 1995). But note
7 that only if there are no permissible inferences that the jury may draw from the evidence
8 can its admission violate due process. Jammal v. Van de Kamp, 926 F.2d 918, 920 (9th
9 Cir. 1991).

10   Petitioner's claim is foreclosed by Ninth Circuit precedent. The federal appellate
11 court has held that "CSAAS testimony is admissible in federal child-sexual-abuse trials,
12 when the testimony concerns general characteristics of victims and is not used to opine that
13 a specific child is telling the truth. Although those cases did not address due process
14 claims, both rejected the contention that CSAAS testimony improperly bolsters the
15 credibility of child witnesses and precludes effective challenges to the truthfulness of their
16 testimony – the very arguments that [petitioner Brodit] advances here." Brodit, 350 F.3d at
17 991 (internal citations removed). In the instant case, the trial court's instructions under
18 CALJIC No. 10.64 properly told the jury how to view the evidence, consonant with the
19 Ninth Circuit's ruling in Brodit. Juries are presumed to follow their instructions. See
20 Richardson v. Marsh, 481 U.S. 200, 206 (1987). The claim is DENIED.

21 **6.     Admission of an Uncharged Act of Violence**

22   Petitioner contends that the admission of an uncharged act of violence toward
23 Christian – specifically, the evidence that petitioner struck Christian with a chain – violated
24 his right to due process. Pet., P. & A at 51. The state appellate court concluded that the

---

demonstrated by the evidence, are not inconsistent with [him] [her] having been [molested] [raped]."

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Campos879.hcruling.md      12

1 admission was permissible because it established an element of the crimes and was
2 probative of the victim's credibility.  Op. at 10.

3       As noted above, the United States Supreme Court has left open the question of
4 whether admission of propensity evidence violates due process.  <u>Estelle v. McGuire</u>, 502
5 U.S. 62, 75 n. 5 (1991).  Because the Supreme Court has reserved this issue as an "open
6 question," the Ninth Circuit has held that a petitioner's due process right concerning the
7 admission of propensity evidence is not clearly established for purposes of review under
8 AEDPA.  <u>Alberni v. McDaniel</u>, 458 F.3d 860, 866-67 (9th Cir. 2006).  This claim is
9 DENIED.

10       Even if this were not propensity evidence, the claim would nevertheless be without
11 merit.  The evidence of petitioner hitting Christian with the chain is relevant to establishing
12 that the petitioner committed the offenses with the use of "force" or "duress."  This
13 particular conclusion addresses petitioner's contention that the trial court violated his
14 constitutional rights by not issuing a limiting instruction.  Because it was evidence of the
15 existence of an element of the crime, the trial court cannot have violated petitioner's right
16 by not issuing such an instruction.  Furthermore, this particular conclusion addresses
17 petitioner's contention that defense counsel rendered ineffective assistance by failing to
18 request a limiting instruction on the use of this evidence.  Petitioner must not only establish
19 that defense counsel's performance was deficient, he must also establish that the alleged
20 deficiency resulted in prejudice.  <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88, 694-95
21 (1984).  Because the court has concluded that the trial court did not commit a
22 constitutional error in failing to give a limiting instruction, trial counsel's failure to request
23 such an instruction cannot have been a deficient performance.

24 <center>**CONCLUSION**</center>

25       Applying the highly deferential standard imposed by AEDPA, this court concludes
26 that the state court's determination was not contrary to, or an unreasonable application of,
27 clearly established Supreme Court precedent, nor was it based on an unreasonable
28

determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d) (1), (2).  The petition for writ of habeas corpus is DENIED.  The clerk shall enter judgment and close the file.

**IT IS SO ORDERED.**

DATED: __7/11/08_____         _____
                              RONALD M. WHYTE
                              United States District Judge

Order Denying Petition for Writ of Habeas Corpus
G:\Pro-Se\SJ.RMW\HC.05\Campos879.hcruling.md        14